# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | |
|---|---|
| TAMALE MASTERS, : | |
| Plaintiff, : | |
| | Case No. 3:14cv00337 |
| vs. : | |
| | District Judge Thomas M. Rose |
| CAROLYN W. COLVIN, : | Chief Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social | |
| Security Administration, : | |
| Defendant. : | |

## REPORT AND RECOMMENDATIONS[1]

**I.     Introduction**

The Court previously entered Judgment in this Social Security case and remanded the matter to the Social Security Administration pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings.  (Doc. #s 23, 24).  The case is presently before the Court on Plaintiff's Motion for Attorney Fees Under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d) (Doc. #25), the Commissioner's Response (Doc. #26), Plaintiff's Reply (Doc. #27), and the record as a whole.

Plaintiff seeks an award of attorney fees under the EAJA in the total amount of $6,913.77.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendations.

## II.     Discussion

The Commissioner contends that an EAJA award to Plaintiff is unwarranted because the government's position in support of Administrative Law Judge (ALJ) Amelia G. Lombardo's non-disability decision was substantially justified.

"The EAJA provision for fees specifies that 'a court shall award' attorney fees and other expenses to a prevailing party, including a Social Security claimant, in civil litigation against the United States government, 'unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.'" *Minor v. Comm'r of Soc. Sec.*, 826 F.3d 878, 881 (6th Cir. 2016) (quoting, in part, 28 U.S.C. § 2412(d)(1)(A)) (other citations omitted).

"The government's position is substantially justified if it is 'justified in substance or in the main'— that is, justified to a degree that could satisfy a reasonable person. *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 498 (6th Cir. 2014) (quoting, in part, *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *see Howard v. Barnhart*, 376 F.3d 551, 554 (6th Cir. 2004). The Commissioner's position was substantially justified if it rested on "'a reasonable basis in both law and fact.'" *Glenn*, 763 F.3d at 498 (quoting *Pierce*, 487 U.S. at 565). The burden is on the Government to establish that its position was substantially justified. *Id*.

"The purpose of the EAJA is to remove financial obstacles to challenging unreasonable government action." *Id*. (citing *Delong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 725-26 (6th Cir. 2014)).

The Commissioner notes that the government's position in support of ALJ Lombardo's decision acknowledged "the Court could find that the ALJ erred by not granting controlling weight to Dr. Kim's opinion." (Doc. #26, *PageID*# 1015). Despite this error, according to the government, the ALJ's decision was supported by substantial evidence because the vocational expert identified a job that Plaintiff could perform if she was limited in the manner Dr. Kim described. The Commissioner continues:

> Although the Magistrate Judge rejected the Commissioner's harmless error argument and concluded that the vocational expert's testimony at the 2013 hearing was "equivocal and, at times, uncertain or inconsistent" [Doc. #16, *PageID#* 928], the Commissioner believes her position was reasonable because Plaintiff did not question the reliability of the vocational expert's testimony at the January 2013 hearing in her Statement of Errors.

(Doc. #26, *PageID*#s 1015-16). The Commissioner's reasoning is flawed because the government, through counsel, reviewed and considered the vocational expert's testimony in support of its harmless-error contention. *See* Doc. #13, *PageID*#s 876-77. This review should have alerted the government to the equivocation and uncertainty or inconsistency in the vocational expert's testimony, particularly when it is compared to the unequivocal testimony of a different vocational expert who had previously testified during ALJ Bowen's hearing. *See* Doc. #16, *PageID*#s 928-29.

In addition, the Commissioner's position in support of ALJ Lombardo's decision was not substantially justified due to the many significant errors in the ALJ's decision. Upon his de novo review of the record in this case, U.S. District Judge Rose concluded, in part, that a

3

remand for further proceedings (rather than for an award of benefits) was warranted due to the ALJ's error "in [her] analysis of the opinion of Dr. Eugene Kim, Plaintiff's treating physician…." (Doc. #23, *PageID*#s 987-88).  The fact alone that Judge Rose remanded the matter does not necessarily unearth a lack of substantial justification in the government's position. *See Glenn*, 763 F.3d at 498.  But, what does emerge from ALJ Lombardo's decision—particularly, her flawed consideration of Dr. Kim's opinions—is the presence of so many significant errors that it was unreasonable for the Commissioner to support the ALJ's decision.  Here, the prior detailed discussion of these errors (in the Report and Recommendations) bears repeating and likewise illustrates why the Commissioner's present search for substantial justification lacks merit:

> ALJ Lombardo discounted Dr. Kim's opinion on the ground that "the prior decision [by ALJ Bowen] adequately considered the examination findings and May 2011 EMG report, and the Appeals Council indicated no fault with this evaluation." (Doc. #5, *PageID*# 55).  In her previous decision, ALJ Bowen acknowledged that Plaintiff's carpal tunnel syndrome was confirmed by EMG on May 15, 2008. *Id*. at 145 (citing *PageID* #427).  ALJ Bowen also observed:
>
>> An EMG and nerve conduction study on May 17, 2011, showed only moderately severe bilateral median neuropathies at the wrist with only mild motor unit dropout....
>
> *Id*. (citing *PageID*# 717). ALJ Bowen viewed this EMG as part of the objective evidence that she found "not consistent" with Plaintiff's argued-for limitation to occasional handling and fingering. *Id*.
>
> The problem here is that ALJ Lombardo overlooked or ignored the fact that the record ALJ Bowen reviewed did not have Dr. Kim's September 2011 opinion.  This is significant because Dr. Kim based his September 2011 opinion—that Plaintiff was limited to occasional handling and fingering—on the May 17, 2011 EMG. *Id*. at 756.  As a result, there is a conflict in the record between ALJ Bowen's opinion and Dr. Kim's

opinion over the meaning of the May 17, 2011 EMG results. Because ALJ Bowen did not have the benefit of Dr. Kim's opinion at the time of her review, it was not reasonable for ALJ Lombardo to rely on ALJ Bowen's review of these EMG results. Substantial evidence therefore fails to support ALJ Lombardo's finding that ALJ Bowen "adequately considered" the results of the May 2011 EMG.

ALJ Lombardo also discounted Dr. Kim's opinion as "unsupported by objective signs and findings in the preponderance of the record." *Id*. at 55. ALJ Lombardo reasoned, "the examination findings documented by Dr. Kim ... do not support his assessment." This finding is not supported by substantial evidence. Dr. Kim's clinical examinations did in fact show "some positive carpal tunnel signs." *Id*. Although ALJ Lombardo attempts to downplay the significance of these signs and test results by describing Dr. Kim's examinations as "otherwise normal," this characterization fails to recognize Dr. Kim's observations during treatment sessions that are pertinent to Plaintiff's carpal tunnel syndrome including:

- Healed scars at the bases of both palms consistent with Plaintiff's prior carpal tunnel release surgeries;

- Mild bilateral wrist flexor tenosynovitis;

- "Strongly positive" bilateral Tinel signs at Plaintiff's carpal tunnels;

- Positive carpal tunnel compression tests;

- Positive Phalen's testing which produced paresthesia in the index, long, ring, and small fingers of both hands;

- Paresthesia upon compression of Plaintiff's bilateral Guyon's canals in all of her digits;

- Mildly positive Tinel signs at Plaintiff's cubital tunnels; and

- Weakness with manual motor testing in Plaintiff's bilateral upper extremities.

(Doc. #5, *PageID* #716). Other providers observed similar clinical signs. *See id*. at 455, 699, 757-60. Plaintiff's EMG testing has also been consistent with carpal tunnel syndrome. *Id*. at 427-28, 717-19. ALJ Lombardo's

5

election to focus only upon the normal portions of Plaintiff's clinical examinations (portions which were not necessarily related to Plaintiff's carpal tunnel syndrome) to the exclusion of the ample objective evidence consistent with Dr. Kim's conclusions does not support her rejection of Dr. Kim's opinion. *See Germany–Johnson v. Comm'r of Soc. Sec.*, 313 Fed Appx. 771, 777 (6th Cir.2008) (finding error where the ALJ was "selective in parsing the various medical reports"); *see also Mukes v. Commissioner*, 946 F.Supp.2d 737, 747 (S.D. Ohio 2013) ("In the case at bar, the ALJ erred in selectively reading the record and making conclusions that constituted a 'cherry picking' of evidence, designed to produce the result of a negative finding. The ALJ did not consider 'all relevant evidence' as is required, but erroneously relied instead only on that information supporting her final conclusion.").

ALJ Lombardo also erred to the extent she substituted her own lay opinion in place of Dr. Kim's medical opinion about the May 2011 EMG results. Dr. Kim interpreted those EMG results as evidence supporting his conclusion that Plaintiff was limited to occasional handling and fingering. *Id*. at 756. It was therefore necessary for the ALJ to rely on medical evidence, such as another medical source opinion, in order to reasonably conclude that the May 17, 2011 EMG results were inconsistent with, or failed to support, Dr. Kim's opinion. "[A]n ALJ 'may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence.'" *Simpson v. Comm'r of Soc. Sec.*, 344 Fed App'x 181, 194 (6th Cir. 2009) (quoting, in part, *Meece v. Barnhart,* 192 Fed Appx. 456, 465 (6th Cir. 2006)) (citing *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) (stating "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings")).

ALJ Lombardo additionally noted, "Dr. Kim also indicated that he thought [Plaintiff's] symptoms were more likely associated with her cervical problem, rather than carpal tunnel syndrome." (Doc. #5, *PageID* #55 (citing *PageID* #s 761-64)). Here, the ALJ misconstrued Dr. Kim's statement. Dr. Kim did not indicate that Plaintiff's symptoms were "more likely" associated with her cervical problem "rather than carpal tunnel syndrome." Instead, Dr. Kim stated, "[w]hile some of her symptoms are due to recurrent carpal tunnel syndrome[,] I do think that some of her symptoms are due to cervical spine issues as well...." *Id*. at 761. Dr. Kim thus thought that Plaintiff had some symptoms related to carpal tunnel syndrome and some symptoms related to her cervical issue "as well." *Id*. This is the plain meaning of his statement, which was not contrary to his

6

>    opinion that Plaintiff's symptoms from carpal tunnel syndrome restricted her to occasional handling and fingering. In addition, Dr. Kim's opinion about these two areas of problems is consistent with Dr. Hoskins' thoughts after he performed Plaintiff's cervical-fusion surgery. Dr. Hoskins indicated, "We are likely dealing with more of a double crush issue...." *Id*. at 699. Dr. Hoskins' opinion about a likely double-crush issue refers, by definition, to a connection (through a single nerve) between Plaintiff's cervical problems and carpal tunnel syndrome…. This sheds light on a possible cause of Plaintiff's carpal tunnel syndrome and is consistent with Dr. Kim's statement about Plaintiff's problems in both areas of her body.
>
>    ALJ Lombardo also found that Dr. Kim's opinions are due little weight because Plaintiff "was observed at the January 2013 hearing to be holding a Kleenex and papers with her hands." *Id*. at 55. The ALJ's reliance on these facts to discount Dr. Kim's opinion was not reasonable given the tiny weight and mass of a Kleenex and the lack of specific information about the amount of papers Plaintiff was holding. Indeed, a reasonable mind would not accept this evidence to discount Dr. Kim's opinion or to support the ALJ's conclusion that Plaintiff could perform jobs requiring frequent handling and lifting. It is, instead, more indicative of an ALJ improperly straining to find evidence to support a non-disability conclusion.

(Doc. #16, *PageID*#s 922-26).

In light of these multiple significant errors and the resulting need for remand, and the government's reliance on unequivocal and uncertain or inconsistent vocational-expert testimony, the Commissioner's decision to support ALJ Lombardo's opinion was not substantially justified. *Cf. Glenn*, 763 F.3d at 500 ("This was not a case where remand was based on the ALJ's failure to adequately explain his findings…, or where the weight given was explained by other facts in the record…. The errors go to the heart of Glenn's disability claim."); *cf. also Howard*, 376 F.3d at 554 ("Under the circumstances of this case, where the administrative law judge was found to have selectively considered the evidence in denying

7

benefits, we hold that the Commissioner's decision to defend the administrative law judge is without substantial justification.").

Accordingly, Plaintiff's EAJA Motion is well taken.

## IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Motion for an Award of Attorney Fees Under the Equal Justice Act, 28 U.S.C. §2412(d) (Doc. #25) be GRANTED;

2. The Commissioner be ordered to pay Plaintiff's attorney fees and costs in the total amount of $6,913.77; and

3. The case remain terminated on the docket of this Court.

November 17, 2016

                                                s/ Sharon L. Ovington
                                                Sharon L. Ovington
                                      Chief United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).